## JAQUES *v.* GREAT FALLS MANUFACTURING CO.

Who are fellow-servants within the rule exempting the employer from the
consequences of the negligence of fellow-servants, is not ordinarily deter-
mined by rank or grade of service, but by the character of the service
performed or acts complained of.

As a general rule, those doing the work of a servant are fellow-servants,
whatever their grade of service; and a servant of whatever rank, charged
with the performance of the master's duty toward his servants, is, as to
the discharge of that duty, a vice-principal, for whose acts and neglects
the master is responsible.

CASE, for negligence.  Verdict for the plaintiff.  The declara-
tion alleges, among other things, that the plaintiff was in the ser-
vice of the defendants as a weaver; that December 12, 1889,
while she was engaged in the work assigned to her on a certain
loom, the shuttle, by reason of defects in the machinery known to
the defendants and not known by her, flew out of the loom, struck
her in the eye, and destroyed her sight.  The plaintiff was em-
ployed by the defendants in their cotton mill as a weaver, and had
charge of six looms.  She adduced evidence tending to show that
the shuttle would not fly out of a loom unless the machinery was
defective or out of repair; that she knew nothing about the
machinery, and was not allowed to meddle with it; that in case it
did not properly operate, she was required to call upon John C.
Burke, a loom-fixer employed by the defendants, whose duty was
to look after and keep in proper repair the machinery of the looms
operated by the plaintiff; that about ten o'clock in the forenoon
of December 12, 1889, the shuttle flew out of her loom numbered
315; that, in accordance with instructions, she thereupon called
on Burke, who examined the loom, made whatever repairs he
thought necessary, and set it running; that about eleven o'clock of
the same day the shuttle caught in the "binder" or in the
"picker;" that she thereupon again called on Burke, who again
examined the loom, made such repairs as he deemed necessary,
and put it in motion; that shortly afterwards, and before twelve

o'clock, the shuttle flew out and struck her in the eye. She testi-
fied that the behavior of loom 315 made her afraid of it, and that
she watched it more closely than the other looms. A motion for
a nonsuit was denied, and the defendants excepted.

The defendants called as a witness William S. Marston, one of
their overseers, who testified, among other things, that under him
Burke had the sole and exclusive charge of the machinery of the
looms operated by the plaintiff; that the plaintiff was not per-
mitted to meddle with it; that in case the looms, for any cause,
did not properly operate, her duty was to call on Burke; that
when he had examined the looms, repaired them, if necessary, and
set them running, the plaintiff had the right to understand that
they were in perfect order and could be safely operated. The
defendants requested the court to instruct the jury that Burke,
section hand in No. 3 weave room of the defendant corporation,
was not a vice-principal of the defendants, but was a co-servant
with the plaintiff for the following reasons: That, according to the
testimony of William S. Marston, Burke was employed in the
common and general employment of manufacturing cotton cloth
under the same general and common control, and paid by the
same principal; that Mr. Burke, Mr. Hobart, Mr. Marston him-
self, and even the superintendent of the defendants' mills, were in
the common employment of the defendants and working to the
same end. viz., the manufacture of cotton cloth, and under the
control of the officers of the company higher in rank and responsi-
bility. The request was denied, and the defendants excepted.

*W. S. & D. R. Pierce*, for the defendants.

*Russell & Boyer*, for the plaintiff.

CLARK, J. The motion for a nonsuit presents the question
whether the jury could properly find a verdict for the plaintiff
upon the evidence submitted. *Paine* v. *Railway*, 58 N. H. 611.
The evidence produced by the plaintiff,—that the shuttle would
not fly out of a loom unless the machinery was defective or out of
repair; that the plaintiff had no knowledge of the machinery and
was not allowed to meddle with it, and in case it did not operate
properly was required to call on Burke, a loom-fixer employed by
the defendants to look after the looms operated by the plaintiff
and keep them in proper repair; that the shuttle flew out of one
of her looms about ten o'clock in the forenoon of the day of the
injury, and she notified Burke, who examined it, made whatever
repairs he thought necessary, and set it running; that at
eleven o'clock the shuttle caught in the "binder" or in the
" picker," and she again called on Burke, who again examined the
loom, repaired it, and put it in operation; that shortly after, and
before twelve o'clock, the shuttle flew out and struck her, putting

out one of her eyes; and that she had watched the loom more closely than the others because its action made her afraid of it,— was evidence tending to show that the plaintiff, exercising reasonable care, was injured by the defendants' negligence in failing to provide suitable machinery for her use; and, in the absence of rebutting evidence, was sufficient to sustain a verdict for the plaintiff. The motion for a nonsuit was properly denied.

The defendants excepted to the refusal to instruct the jury that Burke, the section hand and loom-fixer, being engaged in the same common employment and under the same general control, was a fellow-servant of the plaintiff, and that the defendants were not liable for his negligence. As the servant assumes the ordinary risks of his employment including the negligence of his fellow-servants, the master is not responsible to the servant for injuries happening from that cause. But the rule of law which exempts the master from responsibility for such injuries does not relieve him from the duty which he owes to the servant to provide suitable and safe machinery and appliances for the use of the servant in his employment. *Fifield* v. *Railroad*, 42 N. H. 225; *Hanley* v. *Railroad*, 62 N. H. 274; *Ford* v. *Railroad*, 110 Mass. 240, 260; *Hough* v. *Railway*, 100 U. S. 213. This duty may be, and in case the employer is a corporation must always be, discharged by agents and servants, and the agent or servant charged with its performance, whatever his rank of service may be, stands in the place of the employer, who thereby becomes responsible for the acts and chargeable with the negligence of such agent or servant.

In many kinds of service the care and keeping of tools and machinery in a condition of safety require merely the attention and repairs occasioned by ordinary use and wear, and are properly a part of the regular business of the servant engaged in the use of such tools and machinery. In such cases the duty of the employer is performed by furnishing safe tools and machinery and the means of making needed repairs, and the duty of making the repairs may be intrusted to servants, and any neglect in the performance of this service is the negligence of a servant. *McGee* v. *Boston Cordage Co.*, 139 Mass. 445. But in cases where skill and practical knowledge are required in keeping machinery in a reasonable condition as to safety, beyond what is needed in operating it, it is the duty of the employer to supply the necessary intelligence, skill, and experience in the care and inspection of the machinery to protect the servant from injury; and for any failure to exercise proper care and skill the employer is accountable.

The question who are fellow-servants within the rule exempting the employer from the consequences of the negligence of fellow-servants, is not ordinarily determined by rank or grade of service, but by the character of the service performed or acts complained of. As a general rule, those doing the work of a servant are fellow-servants, whatever their grade of service; and a servant of

whatever rank, charged with the performance of the master's duty towards his servants, is, as to the discharge of that duty, a vice-principal, for whose acts and neglects the master is responsible, because he has invested him with the responsibility of doing that which the master is bound to have carefully performed. *Moynihan* v. *Hills Co.*, 146 Mass. 586, 593; *Daley* v. *Railroad*, 147 Mass. 101, 114; *Booth* v. *Railroad*, 73 N. Y. 38; *Fuller* v. *Jewett*, 80 N. Y. 46; *Davis* v. *Railroad*, 55 Vt. 84; *Tierney* v. *Railway*, 33 Minn. 311; *Cincinnati, etc., Railroad Co.* v. *McMullen*, 117 Ind. 439; *Ell* v. *Railroad*, 1 N. D. 336—*S. C.*, 43 Alb. L. J. 414; *Dayharsh* v. *Railroad*, 103 Mo. 570.

The test whether the plaintiff and Burke were fellow-servants was not whether they were engaged in the common employment of manufacturing cotton cloth under the same general control and paid by the same principal, but whether Burke represented the defendants in the responsibility or performance of any duty which they owed to the plaintiff. It was the duty of the defendants to furnish suitable machinery and keep it in suitable condition for the plaintiff's use. The duty of keeping the looms in proper repair required experience and the exercise of mechanical skill, and was specially intrusted to Burke; and so far as the discharge of that duty was concerned Burke represented the defendants, and any negligence on his part in the performance of that duty was the negligence of the defendants.

It is immaterial that Burke exercised no control or authority over the plaintiff. The negligence of the defendants complained of was not in ordering the plaintiff into a place of danger, but in failing to use ordinary care to prevent the exposure of the plaintiff to unusual hazard in her ordinary employment.

*Exceptions overruled.*

CARPENTER, J., did not sit: the others concurred.