WILLIAM H. H. BROCK *v.* IRELAND-GRAFTON COMPANY.

*Conrad E. Snow* (by brief and orally), for the plaintiff.

*Hughes & Burns* (*Mr. Hughes* orally), for the defendant.

MARBLE, J.   The plaintiff was fifty-nine years old.   He began work in the defendant's shoe factory at Dover on May 19, 1925, and was injured six days later.   The machine which he was running at the time was designed to press the soles of shoes into shape, and was called a leveler or beating-out machine.   Extending upward from the machine and slanting toward the operative at an angle of about forty-five degrees were two metal projections, called legs, to the ends of which lasts were attached.   These lasts were within reaching distance of the operative as he sat at the machine.   When the power was applied, one of the legs would move backward into a vertical position to meet a descending weight.   The leg would continue to move forward and backward until the sole was properly leveled, when it would be stopped by the operator.   Only one leg could be operated at a time.   The legs were controlled by two treadles raised about

three inches above the floor. A leg was set in motion by the treadle located on the same side of the machine as the leg itself and stopped by a slight pressure of the opposite treadle.

Just before the accident the plaintiff started the left leg, and, as was customary, allowed it to run while he was adjusting a shoe to the right-hand last. When he had finished, he touched the right treadle lightly to stop the left leg, and then pressed down on this treadle to start the other leg. At the same time, he grasped the left shoe to remove it from the last. The motion of the left leg did not cease, however, and his left hand was caught and crushed between the shoe and the weight.

The machine was owned by the United Shoe Machinery Company and leased to the defendant in 1904. It was not then a new machine, but had been remodeled. Its parts were worn, and an agent of the United Shoe Machinery Company had advised the defendant to send it to the factory to be overhauled. This had never been done.

There was much testimony that the worn condition of the parts often prevented the brake from working effectively, and that as a consequence the momentum of the machine carried the moving leg to a point where the power was again automatically applied and the leg carried through another operation. The plaintiff had not been informed and did not know that there was any likelihood that the machine would thus repeat or that it had ever done so. Even if he had been a workman of extensive experience, the jury might well have found that he was entitled to this information. *Deschene* v. *Company*, 75 N. H. 363; *Willis* v. *Company*, 75 N. H. 453. But he was not an experienced operative in any sense of the term: his work in shoe factories had been confined to a short period more than thirty-five years before. Although he explained to his foreman that he had not worked on a leveler for many years and "had mostly forgotten how to run one," he received practically no instructions.

The defendant was not absolved from the ordinary duties of an employer merely because it did not own the machine. *Bilodeau* v. *Company, ante,* 196. The only safe method of operation was to use but one foot in manipulating the treadles and to grip the shoe by the heel when removing it from the last. The plaintiff, who had never been told to take these precautions, used both feet on the treadles and placed his hand over the shoe, thus bringing it in direct line with the weight.

It is the defendant's contention, however, that the machine did not repeat at the time of the accident, but that the plaintiff inadvert-

ently stepped on the left treadle and started the left leg himself. On the other hand, the plaintiff declares unequivocally not only that the machine repeated but that as he stood with his hand caught he observed the right leg operating and stopped it. Both legs could not have been in motion at the same time if the machine had been working properly. The testimony that the left treadle was found level with the floor after the accident does not effectually refute the plaintiff's claim. The jury may have given no credence to this testimony or may have believed that the plaintiff in attempting to get loose from the machine pushed the treadle into that position.

One of the causes of repeating was an excess of oil on the brake disk. The plaintiff did not know this, and oiled the machine just prior to the accident. The fact that certain repairs had been made on the machine three months before did not conclusively prove that the danger of repeating had been eliminated, and the jury were not obliged to accept as true the testimony that these repairs had rendered the machine mechanically perfect. There was evidence that the machine had been repaired frequently, but had never run safely for more than two or three days thereafter. One witness testified that he had "had the agent come in there and fix that machine and before he would get out of town it would repeat." The evidence warranted the jury in finding that the machine had been repaired twice since the accident, that a workman had nearly lost his hand because the machine repeated, and that it had been finally discarded except for an occasional piece of work.

The defendant concedes that the machine had been known to repeat from numerous causes, but argues that the plaintiff has failed to show that any of these causes existed at the time of his injury. The plaintiff's positive assertion that the machine actually did repeat, coupled with the testimony already referred to, fully justified the inference that one, if not both, of the causes above mentioned was in operation. *Cooley* v. *Company*, 75 N. H. 529, 530. It is immaterial that there may have been no evidence of the existence of a third suggested cause, since the defendant has expressly waived all special exceptions to the submission of the various issues. *Watkins* v. *Railroad, ante*, 10, 13. Furthermore, the jury were instructed that their verdict must be based upon evidence and not upon conjecture. *Brito* v. *Company*, 79 N. H. 163.

"There was testimony that the employee was . . . inexperienced, that he was not properly instructed and that the machine he was put to work upon was out of repair and unusually dangerous to oper-

ate. It could be found that the accident resulted from a combination of these conditions and that the defendant was liable therefor." *Moore* v. *Hoyt*, 80 N. H. 168, 171. See also *King* v. *Gardiner*, 76 N. H. 442.

*Judgment on the verdict.*

SNOW, J., did not sit: the others concurred.